# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIFESCIENCE PLUS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. |
| | ) |
| COAG MEDICAL, LLC, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

## PLAINTIFF LIFESCIENCE PLUS, INC.'S COMPLAINT

Plaintiff LifeScience Plus, Inc. ("LSP") files this Complaint and Demand for Jury Trial against CoAg Medical, LLC ("Defendant" or "CoAg") and alleges as follows:

## NATURE OF ACTION

1. LSP brings this action to enjoin Defendant's infringement of LSP's distinct and well-known BLOODSTOP trademark (the "BLOODSTOP Mark") and to protect the consuming public from confusion and deception. Accordingly, this is a civil action for (i) trademark infringement arising under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (ii) use of false designations of origin in commerce and false advertisement, arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) unfair competition, arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iv) unfair competition and deceptive trade practices under Del. Code Title 6, § 2531 et seq.; (v) unfair competition and trademark infringement under Delaware Common Law; (vi) cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and (vii) trademark dilution and injury to business reputation under Del. Code Title 6, § 3313.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the claims arising under the laws of the State of Delaware pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendant CoAg Medical, LLC. Defendant is an LLC organized and existing under the laws of the state of Delaware. As such, Defendant has submitted to personal jurisdiction in this Court, since it is a resident and citizen of the State of Delaware by virtual incorporating in Delaware and engaging in systematic and continuous contacts with the State of Delaware.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

5. Plaintiff LSP is a Delaware corporation with its principal place of business at 2520 Wyandotte St # A, in Mountain View, California. LSP has been selling hemostasis products in the United States and globally with its incontestable BLOODSTOP Mark for over 15 years.

6. Defendant CoAg is a Delaware LLC with its principal place of business at 545 Atwater Circ., St. Paul, MN 55103. CoAg may be served through its registered agent of service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE.

7. Upon information and belief, Defendant only recently began to sell hemostasis wound care products under the BLEEDSTOP trademark (the "BLEEDSTOP Mark") and continues to sell under the STOPSBLEEDING trademark (the "STOPSBLEEDING Mark")

(collectively, the "Infringing Products"). Furthermore, upon information and belief, the Infringing Products, particularly the products under the BLEEDSTOP Mark did not reach mass consumers until recently, when Defendant started to sell its products in major retail platforms including, for example, CVS, Walgreens, Walmart, and Amazon.

8. Defendant directly or indirectly distributes, markets, sells, and/or offers to sell the Infringing Products throughout the United States, including in this judicial district. Defendant is the owner of and is responsible for the website at the domain name www.bleedstop.com and www.stopsbleeding.com. Upon information and belief, Defendant is also responsible for selling the Infringing Products on major retailers online including Amazon's and Walmart's websites. *See, e.g.*, Ex. 1 (Amazon.com – BleedStop); Exs. 2, 3 (Walmart). These websites are not simply informational. They enable citizens of Delaware, to purchase the Infringing Products. Defendant also sells the infringing products through retail stores, including Walmart, Walgreens, and CVS. Through the websites and these retail locations, Defendant markets its products and services directly to consumers, including the customers in this judicial district.

9. In connection with its business, upon information and belief, Defendant transacts business, promotes its goods and services, and enters into contracts to supply services and/or products in Delaware, with Delaware companies and citizens.

## LSP AND ITS PRODUCTS

10. LSP is a leader in advanced wound care technology, which develops and sells innovative hemostasis dressing products. LSP sells BloodSTOP product line through multiple marketing channels to OTC consumers and to medical professionals.



Ex. 4 (https://lifescienceplus.com/products/bloodstop-otc-over-the-counter/).

11. LSP's products are sold in the United States and globally, and are used in many surgical, trauma and wound treatment contexts, including prehospital and hospital use such as surgery, emergency trauma and burn care, paramedics, ulcers, nose and dental wounds, as well as battlefield wounds.  For example, LSP sells its BLOODSTOP products to major trauma centers throughout the United States. Unlike traditional hemostasis and gauze products, LSP's dressing turns into a gel upon contact with water or blood, which then seals the wound to prevent contamination and create a moist healing environment.  Furthermore, traditional gauze needs to be changed every few hours or days, as the blood may soak through it.  The removal of the traditional gauze from the skin, however, will again damage the skin, and causes pain and further delays to the healing process.  LSP products do not have such an issue because it is water soluble and biocompatible.  Ex. 5 (https://lifescienceplus.com/).  LSP and its BLOODSTOP products have been awarded and recognized numerous times for its innovation and products.  *See, e.g.*,

4

Ex. 6 (https://myjoyonline.com/kitss-therapeutics-introduces-advanced-hemostat-with-wound-heal-technology/); Ex. 7 (https://kun.uz/en/36884233?q=%2Fen%2F36884233) ("In order to prevent bleeding from the liver and other blood vessels when separating children, we used ultrasound and an argon scalpel, as well as a modern hemostatic material called "BLOODSTOP""); Ex. 8 (https://lifescienceplus.com/category/testimonials/); Ex. 9 (https://lifescienceplus.com/category/news/). LSP's BLOODSTOP products have also been discussed and appraised in many medical publications and conferences.

12. LSP is the owner of the BLOODSTOP Mark whose registration is shown below:

U.S. Registration Number 78,532,632
Goods & Services: Bandages for skin wounds and dressings; Hemostatic products, namely sterile compression dressing for puncture of the vascular access sites; Surgical dressings and adhesive bandages impregnated with hemostatic agents; Gauze for dressings.
First Use Date: September 15, 2002
Registration Date: April 4, 2006

Ex. 10 (BLOODSTOP Trademark Registration).

13. The BLOODSTOP Mark was registered on April 4, 2006 and has achieved incontestable status. Ex. 11 (Official Notice of Acceptance and Acknowledgement under Sections 8 and 15 of the Trademark Act, dated October 24, 2011).

14. LSP, itself and/or through its predecessors, has had a long-standing use of the BLOODSTOP Mark on its products. LSP has used the BLOODSTOP Mark since at least 2002 and has prominently used the BLOODSTOP Mark on its products. Under the BLOODSTOP Mark, LSP provides its hemostasis advanced wound care products and sold them to a variety of customers including medical professionals, military personnel, and consumers. LSP has sold to consumers via CVS from 2010 until the end of 2022, and is currently selling via Walgreens and

Amazon, among other distribution channels.  Defendant started to sell the Infringing Products at CVS, as of the end of 2022, just as LSP's business relationship with CVS was ending.

15. LSP has devoted significant advertising resources and creative energies towards creating goodwill in the BLOODSTOP Mark.  The BLOODSTOP Mark is distinct, and widely recognized by the consuming public as a designation of source, and specifically as a designation of source of the LSP's products.  The BLOODSTOP Mark is federally registered, and LSP uses the federal registration symbol for the BLOODSTOP Mark, and the BLOODSTOP Mark is entitled to constructive notice under 15 U.S.C. § 1072.

16. LSP expends significant revenue and resources in advertising and promoting its goods and services using the BLOODSTOP Mark through various media, including, for example, trade shows, medical conferences, offline advertising, and the Internet.  As a part of this extensive advertising, LSP promotes its goods and services prominently using the BLOODSTOP Mark in its advertising campaigns, marketing materials, and on its website at the domain name https://lifescienceplus.com/.  As one example, LSP uses its BLOODSTOP Mark in a red font for the word "blood" and a black font for the word "STOP" as shown below.

  

*See, e.g.*, Ex. 12 (https://lifescienceplus.com/products/BLOODSTOP-hemostat-for-surface-wounds/); Ex. 13 (https://lifescienceplus.com/products/BLOODSTOP-ix-advanced-hemostat-with-woundheal/).

17. LSP carefully supervises, monitors, and controls the quality of its products and takes care to provide high-quality goods and services to customers. The products, including those offered under the BLOODSTOP Mark, are used in a wide variety of trauma and wound care applications such as in hospitals, battlefield, and at home. It is critical for patients' health and safety that such products are of a particular quality and effectiveness, and meet other standards and regulations, such as FDA regulations. As a result of the continuous use of the BLOODSTOP Mark, and the extensive advertising and promotion of the BLOODSTOP Mark, combined with the high-quality products and services, the BLOODSTOP Mark has acquired tremendous goodwill and secondary meaning among the consuming public, and the BLOODSTOP Mark is a distinctive indicator of LSP products. LSP has developed a strong brand identity through this philosophy and its promotion of its products.

**COAG, ITS PRODUCTS, ACTIVITIES, AND DIRECT COMPETITION WITH LSP**

18. Defendant directly competes with LSP in selling advanced hemostatic products to hospitals and consumers, including consumers on a blood thinner. Defendant and LSP operate in the same channels of trade with similar customers through direct-to-business sales, such as hospitals, and through direct-to-consumer retails sources such as CVS and Amazon.

19. Defendant sells two types of Infringing Products. One type of the Infringing Product is a powder that Defendant claims can stop bleeding by applying to a wound site. Ex. 2 (Walmart). Another type of Infringing Product is a foam which Defendant claims can stop nosebleeds. However, the technologies underlying these types of products do not work as effectively as LSP's technologies and have not succeeded or acclaimed in the market. Indeed, the Infringing Products are of substantial equivalence to TraumArrest and BleedArrest, manufactured by Hemostatis, LLC and Bleed-X and Traumadex, manufactured by Medafor. Ex.

7

15 (FDA 510K Letter). Upon information and belief, Traumadex and TraumArrest are no longer manufactured, and their associated companies have reached the end of life.

20.     Defendant began to market its products under the BLEEDSTOP Mark (as shown below) only in the past couple of years and expanded into the nationwide retailers, such as CVS in late 2022.



Ex. 16 (https://bleedstop.com/).

21.     Prior to using the BLEEDSTOP Mark, Defendant's Infringing Products were, and continue to be sold and marketed under the STOPSBLEEDING Mark.  *See* https://www.stopsbleeding.com/.  Defendant, however, was not able to reach mass market consumers or achieve significant sells prior to using the BLEEDSTOP mark.

22.     Defendant's expansion under the BLEEDSTOP Mark is done through suppliers and directly targets the customers that comprise LSP's potential customer base, such as hospitals, medical professionals and consumers.  Defendant's Infringing Products and websites specifically

8

include product packaging, color schemes, designs, and logos that are almost identical to those offered by LSP.  *Compare* https://lifescienceplus.com/ *with* https://www.stopsbleeding.com/ and https://bleedstop.com/.



23.     In adopting and expanding its use under the Infringing Products, Defendant directly competes with LSP and offers similar goods –  hemostasis products.

24.     On September 25, 2017, Defendant applied to the U.S. Patent and Trademark Office ("PTO") to register the BLEEDSTOP name.  On December 13, 2017, Defendant received a likelihood of confusion refusal in which registration of BLEEDSTOP was refused because of a likelihood of confusion with BLOODSTOP Mark.  While Defendant had an opportunity to respond to the refusal, it chose to abandon its application, which became official on July 11, 2018.  The likelihood of confusion refusal provided actual notice that the Infringing Marks were problematic and actual notice of LSP's ownership of the BLOODSTOP mark.

25.     In late 2022, Defendant began selling the Infringing Products at CVS locations across the country.  During this same time period, LSP's business relationship with CVS came to an abrupt conclusion.

26.  Beyond the given likelihood of consumer confusion, because of the retail expansion of the Infringing Products, Defendant's use of the Infringing Marks has actually deceived consumers.  For example, on April 17, 2023, a doctor and consumer from Chicago sent an e-mail to LSP concerned about how confusing Defendant's BLEEDSTOP product was to BLOODSTOP.  Ex. 17 (e-mail from Stathis Poulakidas to Vicky Feng, dated April 17, 2023).

27.  On April 30, 2023, LSP received a voicemail from a consumer trying to contact Defendant because she had purchased the BLEEDSTOP product in Walgreen and could not remove the product from her skin.  She was recommended to buy BLOODSTOP by a doctor in El Paso hospital.  However, when she went to purchase the product, she confused BLOODSTOP with BLEEDSTOP and bought BLEEDSTOP from Walgreens.  A subsequent conversation with that consumer revealed that she assumed LSP was the source of the BLEEDSTOP product.

28.  On May 11, 2023, a consumer, who is a film director, submitted an inquiry on LSP's website because they were interested in purchasing LSP's BLOODSTOP product.  The consumer had seen medical publications discussing LSP's BLOODSTOP product and believed that LSP's product was superior in the market.  Ex. 18 (email of inquiry). However, in a phone call on the same day, the consumer mentioned that he saw the BLEEDSTOP product in Walgreens and believed it was LSP's product.  LSP had to explain that BLEEDSTOP was not LSP's product.

29.  In short, the Infringing Products imitate LSP's BLOODSTOP Mark and LSP's packaging in a manner that has caused and is likely to cause customer confusion and deceive the public regarding the source, sponsorship, and/or affiliation of that hemostasis product.  Defendant's sale of the Infringing Products is therefore unlawful and is causing irreparable harm to LSP's brand.

30. On information and belief, Defendant owns, operates, and controls the domain names www.bleedstop.com (registered on May 17, 2017) and www.stopsbleeding.com (registered on June 23, 2013), and the content associated with the domain (the "CoAg Websites") without LSP's authorization. These domain names directly reference the Infringing Products at issue.

## COAG'S FALSE ADVERTISING

31. Defendant is also falsely and deceptively misrepresenting the Infringing Products by improperly referencing the FDA and its logo. Defendant is prominently using the Food and Drug Administration's ("FDA") logo in its labeling practices, which falsely suggests an endorsement by the FDA.

32. Defendant also uses the terminology "FDA CLEARED" in a deceptive manner by suggesting on consumer labeling an endorsement by the FDA of a use for which Defendant does not have clearance. In truth, the Infringing Products have indications of use (in its 510(k) letter) on minor wounds and minor nosebleeds for over-the-counter (OTC) use, but it does not have over-the-counter clearance for moderate to severe bleeding. Ex. 15 (510K Letter) at pg. 3 (Indications for Use). While the 510(k) letter does have indications of use for moderate to severe bleeding as prescription use (i.e., in connection with prescriptions by doctors or use by hospitals), the inclusion of clearance for moderate to severely bleeding on OTC packaging misleads the customers into believing that they can use the Infringing Products to treat moderate and severe wound at home. *Id.*

33. In addition, Defendant's packaging also states that its Infringing Products "also works for people on blood thinners." However, the 510(k) clearance does not cover over-the-counter or Rx prescription use for patients on blood thinners. Ex. 15 (510K Letter) at pg. 3.

34. In addition, Defendant's promotion, advertising, distribution, sale, and offering for sale of the Infringing Products has and is likely to deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Infringing Products, and is intended, and is likely to cause such parties to believe in error that the Infringing Products have been authorized, sponsored, approved, endorsed or licensed by LSP or that Defendant is in some way affiliated with LSP. For example, a news article published on www.nsmedicaldevices.com stated that Defendant produces products such as "BleedingStops, BleedStop, BLOODSTOP, StopBlood and StopBloodloss." Ex. 19 (https://www.nsmedicaldevices.com/news/coag-medical-introduces-new-stopsbleeding-wound-management-product-261015-4701254/) (emphasis added).

35. It is of no surprise that Defendant is trading off LSP's BLOODSTOP mark and falsely suggesting various endorsements from the FDA, given that products with similar technologies to that of Defendant—powder and foams—have not succeeded in the marketplace. Accordingly, Defendant has resorted to unfair business practices.

**FIRST CAUSE OF ACTION**
**Federal Trademark Infringement (15 U.S.C. § 1114)**

36. LSP, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

37. Defendant, without authorization from LSP, has used and is continuing to use spurious designations that are confusingly similar to, the BLOODSTOP Mark.

38. The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether the Defendants BLEEDSTOP and STOPSBLEEDING products originate from, or are affiliated with, sponsored by, or endorsed by LSP.

39. Upon information and belief, Defendant has acted with knowledge of LSP's ownership of the BLOODSTOP Mark and to unfairly benefit from the goodwill symbolized thereby.

40. Defendant's activities as described above constitute trademark infringement of the BLOODSTOP Mark in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41. Upon information and belief, Defendant has willfully infringed the BLOODSTOP Mark. Defendant is aware of the BLOODSTOP Mark given that its trademark application for BLEEDSTOP was rejected on the ground of likelihood of confusion with the BLOODSTOP Mark. Defendant has also received constructive notice due to the BLOODSTOP Mark's federal trademark registration with the PTO. Defendant has further received notice of its trademark infringement in a cease and desist letter sent on February 21, 2023.

42. Upon information and belief, Defendant intends to continue its infringing acts, unless restrained by this Court. Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the BLOODSTOP Mark, justifying an award to LSP of increased damages and attorneys' fees and costs incurred under 15 U.S.C. § 1117(a).

43. Upon information and belief, Defendant has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

44. Because of Defendant's unlawful activities, LSP has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, LSP is entitled to preliminary and/or permanent injunctive relief under 15 U.S.C. § 1116.

## SECOND CAUSE OF ACTION
### False Designation of Origin and False Advertising (15 U.S.C. § 1125(a))

45. LSP repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

46. Defendant's promotion, advertising, distribution, sale, and/or offering for sale of the Infringing Products under the Infringing Marks has and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Infringing Products, and is intended, and is likely to cause such parties to believe in error that the Infringing Products have been authorized, sponsored, approved, endorsed or licensed by LSP or that Defendant is in some way affiliated with LSP.

47. Defendant's promotion, advertising, distribution, sale, and/or offering for sale of the Infringing Products with the FDA logo is likely to confuse, mislead, or deceive consumers, the public, and the trade as FDA's endorsement to the Infringing Products, when such endorsement does not exist. Furthermore, Defendant's use of FDA's logo runs afoul of FDA's logo Policy. *See* Ex. 20 (https://www.fda.gov/consumers/consumer-updates/it-really-fda-approved#:~:text=Misuse%20of%20the%20FDA's%20logo,organization%2C%20product%2C%20or%20service); Ex. 21 (https://www.fda.gov/about-fda/website-policies/fda-logo-policy).

48. Defendant's promotion, advertising, distribution, sale, and/or offering for sale of the Infringing Products with references to FDA and statements such as, for example, "Works for People on Blood Thinners" (2018)," "Absolutely Works for People on Blood Thinners," "Also Works for People on Blood Thinners," is likely to confuse, mislead, or deceive consumers, the public, and the trade as the products' effectiveness and FDA's approval or clearance on the products' application on blood thinner patients. *See* 21 C.F.R. § 807.97 ("Any representation that creates an impression of official approval of a device because of complying with the

premarket notification regulations is misleading and constitutes misbranding.");

https://bleedstop.com/blood-thinner-patients/; https://bleedstop.com/fda-cleared/.  Defendant, however, does not have such approval or clearance.

49. Defendant's promotion, advertising, distribution, sale, and/or offering for sale of the Infringing Products for OTC customers, with reference to FDA clearance and statements that the products are for "moderate to severe bleeding" (as shown below) when the FDA's indication of use for OTC products is limited to minor bleeding wounds.  Ex. 15 (CoAg's 510K at pg. 3, Indications for Use).  By mixing FDA's indication of use by medical professionals with the indication of use by average consumers on the OTC market, Defendant is likely to confuse, mislead, or deceive consumers, the public, and the trade that average consumers on the OTC market can treat or stop moderate to severe bleeding with the Infringing Products.



Ex. 14 (https://bleedstop-com.3dcartstores.com/BleedStop--Box-of-Four-15-Gram-Pouches-_p_13.html#mz-expanded-view-1014897708742).

50. Defendant's activities as described above constitute the use of false designations of origin in commerce, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act of, 15 U.S.C. § 1125(a).

15

51. Upon information and belief, Defendant has made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

52. Upon information and belief, Defendant intends to continue their infringing acts, unless restrained by this Court.

53. Defendant's acts have damaged and will continue to damage LSP, and LSP has no adequate remedy at law.

### THIRD CAUSE OF ACTION
### Unfair Competition (15 U.S.C. § 1125(a))

54. LSP repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

55. Defendant's activities as described above constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56. Upon information and belief, Defendant has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

57. Upon information and belief, Defendant intends to continue their infringing acts, unless restrained by this Court.

58. Defendant's acts have damaged and will continue to damage LSP, and LSP has no adequate remedy at law.

### FOURTH CAUSE OF ACTION
### Unfair Competition and Deceptive Trade Practices (Del. Code Title 6, § 2531 et seq.)

59. LSP repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

60. Defendant's activities as described above constitute unfair competition and deceptive trade practices under Delaware Code Title 6 § 2532.

61. Upon information and belief, Defendant has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

62. Upon information and belief, Defendant intends to continue their infringing acts, unless restrained by this Court.

63. Because of Defendant's unlawful activities, LSP has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, LSP is entitled to preliminary and/or permanent injunctive relief under 6 Del. C. § 2531.

## FIFTH CAUSE OF ACTION
## Unfair Competition and Trademark Infringement under Delaware Common Law

64. LSP repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

65. Defendant's activities as described above constitute unfair competition and trademark infringement under Delaware common law.

66. Upon information and belief, Defendant has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

67. Upon information and belief, Defendant intends to continue their infringing acts, unless restrained by this Court.

68. Defendant's acts have damaged and will continue to damage LSP, and LSP has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
## Federal Cybersquatting (15 U.S.C. § 1125(d))

69. LSP repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

70.     Defendant, as described above, has registered and used the domain name: www.bleedstop.com and www.stopsbleeding.com that incorporates a confusingly similar variation of the distinctive BLOODSTOP Mark.

71.     On information and belief, Defendant registered this domain name with a bad faith intent to profit from the BLOODSTOP Mark and/or divert customers from LSP.

## SEVENTH CAUSE OF ACTION
### Trademark Dilution and Injury to Business Reputation (Del. Code Title 6, § 3313)

72.     LSP repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

73.     The LSP Mark is distinctive, and has enjoyed such distinction since long before the time Defendant commenced the use of the name BLEEDSTOP and STOPSBLEEDING.

74.     Defendant's activities as described above constitute injury to LSP's business reputation and dilution of the distinctive quality of the BLOODSTOP Mark, in violation of the Delaware Code Title 6 § 2532.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LSP prays for relief and judgment as follows:

(A)     That Defendant, its agents, servants, affiliates, representatives, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be enjoined, preliminarily and permanently from:

    1)     Using the BLOODSTOP Mark or any other mark, symbol or device that is confusingly similar to the BLOODSTOP Mark, including the BLEEDSTOP Mark and STOPSBLEEDING Mark; and

        2)        Committing any other act calculated or likely to cause the public to believe that Defendants are in any manner connected, affiliated or associated with LSP or from otherwise competing unfairly with LSP.

(B)        Pursuant to 15 U.S.C. § 1118, that Defendant delivers to LSP for destruction all material (including, without limitation, all advertisements, promotional materials, and brochures), within its possession, custody or control, either directly or indirectly, that bears the BLEEDSTOP Mark or STOPSBLEEDING Mark or any other designation, symbol or device that is confusingly similar to the BLOODSTOP Mark.

(C)        Pursuant to 15 U.S.C. § 1116(a), that Defendant be directed to file with the Court and serve upon LSP, within thirty (30) days after entry of the injunctive order, a report in writing and under oath setting forth in detail the manner and form by which they have complied with the provisions set forth in paragraphs (A)-(C) above.

(D)        That all domain names owned by Defendant incorporating or similar to the BLOODSTOP Mark and STOPSBLEEDING Mark, be forfeited, cancelled, or transferred to LSP including, but not limited to, www.bleedstop.com and www.stopsbleeding.com.

(E)        Pursuant to 15 U.S.C. § 1117(a) and Delaware common law, that Defendant be directed to account to LSP for all gains, profits, and advantages derived from Defendant's wrongful acts.

(F)        Pursuant to 15 U.S.C. § 1117(a) and Delaware common law and statutes, that LSP recovers from Defendant the greater of three times the amount of Defendant's profits or any damages sustained by LSP, together with interest on such amount and the costs of this action.

(G) Pursuant to 15 U.S.C. § 1117(a) and Delaware common law and statutes, that the Court determine that the case is exceptional and that LSP recovers from Defendant, its attorneys' fees and the costs of this civil action.

(H) That Defendant has been unjustly enriched by its acts of trademark infringement, unfair competition, false advertising, misappropriation, palming off, dilution, injury to business reputation, and deceptive trade practices and LSP is entitled to an accounting of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action.

(I) Such further and other relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

LSP demands a jury trial on all issues so triable.

OF COUNSEL:

Lisa Kobialka
Linjun Xu
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065
(650) 752-1700

Dated: August 4, 2023
10953796

POTTER ANDERSON & CORROON LLP

By: /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff LifeScience Plus, Inc.*